# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 10-0025-WS-M |
| ) | |
| MOBILE AREA MARDI GRAS ) | |
| ASSOCIATION, INC. and DOMINIC ) | |
| TYER, ) | |
| ) | |
| Defendants. ) | |

# ORDER

This matter comes before the Court on plaintiff's Motion for Summary Judgment (doc. 24). The Motion has been briefed and is now ripe for disposition.[1]

**I.  Relevant Background Facts.[2]**

*A.  The Accident.*

The material facts of this insurance coverage dispute do not appear to be contested. On February 24, 2009, defendant Mobile Area Mardi Gras Association, Inc. ("MAMGA") organized a Mardi Gras parade in Mobile, Alabama. In so doing, MAMGA leased a parade float from non-party Mystic Striper Society, then rented that float to non-party Dariese Hair Salon for use in the parade. In the words of defendant Dominic Tyer, he "was a participant in the … MAMGA

---

[1] Plaintiff has requested oral argument. Pursuant to Local Rule 7.3, the Court in its discretion may rule on any motion without oral argument. After careful consideration of the parties' written submissions, the undersigned is of the opinion that oral argument would not be of substantial assistance in resolving the issues presented. Accordingly, the movant's request for oral argument is **denied**.

[2] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, to the extent that any discrepancies do exist as to relevant facts, defendants' evidence is taken as true and all justifiable inferences are drawn in their favor.

parade and was injured while helping another parade participant dismount the float, losing his right eye." (Tyer Response (doc. 27), at 2.) MAMGA characterizes Tyer as having been a "passenger" on the float during the parade, and states that "[t]he parade had concluded and Tyer was injured while assisting another parade participant dismount one of the floats." (MAMGA Response (doc. 26), at 1.) The record lacks further elaboration of the circumstances of the accident. Tyer has taken the position that the float was defective and unreasonably dangerous, and that the defective condition of that float proximately caused his injuries; however, he apparently has not filed suit against MAMGA to date. (Doc. 1, ¶ 8.)[3]

### B. The Policy.

It is undisputed that, on the date of Tyer's injuries, MAMGA had a commercial general liability insurance policy (the "Policy") issued by plaintiff, Nautilus Insurance Company, that was in full force and effect. The Policy generally provided bodily injury and property damage coverage for MAMGA, as named insured, for its stated business of "Mardi Gras Ball and Event." In that regard, the Policy stated that Nautilus "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. 24-1, at 11.) As is customary with commercial liability insurance policies, however, the coverage provided by Nautilus was subject to certain enumerated exclusions. Nautilus identifies three of those exclusions as being relevant to coverage demands for the Tyer injury.[4]

---

[3] In a demand letter dated December 4, 2009, Tyer alleged that the float "had a defective and unreasonably dangerous ladder descending from the platform down to the street," and that the "whole entrance/exit portion of the float had been changed" in the aftermath of his injuries. (Doc. 24, Exh. B.)

[4] There appears to be some disagreement between Nautilus and MAMGA as to whether the relevant policy bears number NC837317 (as Nautilus maintains) or whether it bears number NC837239 (as MAMGA maintains). (Doc. 24, at 3.) However, this discrepancy is not material. Nautilus asserts, and defendants do not contest, that all relevant exclusions for purposes of Nautilus's motion for summary judgment are identical in both forms of the policy. (*See id.* ("the differences in the policy produced by MAMGA … and the actual Nautilus policy are not material to the arguments in this motion, as they contain the same pertinent exclusions set forth herein").) Accordingly, the Court need not ascertain which policy number is correct, as that fact is of no consequence for the Rule 56 analysis.

First, the Policy included an events exclusions endorsement (the "Events Exclusion") stating, *inter alia*, that commercial general liability coverage is excluded for bodily injury or medical payments: "(1) To 'any person' while practicing for, or participating in, any circus, concert, demonstration, event, exhibition, race, rodeo, show, stunting activity, theatrical performance, any contest, or any activity of an athletic or sports nature; [or] (2) To 'any person', authorized or unauthorized, while in the activity area such as, but not limited to, the area known as the pit, track, chute, corral or arena." (Doc. 24-1, at 45.) For purposes of the Events Exclusion, the term "any person" is defined as including, without limitation, "animal handlers, announcers, attendants, clowns, contestants, entertainers, mechanics, musicians, officials, participants, singers, speakers, stage crews, stock contractors, vendors or their employees, any person employed by or doing volunteer work for you or on your behalf, or any person involved in the promotion, sponsoring or production of the event designated in the Declarations." (*Id.*) By its terms, then, the Events Exclusion bars coverage for bodily injury to event participants during the event or in the activity area.

Second, the Policy contained an automobile exclusion (the "Auto Exclusion") that expressly excluded coverage for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any … 'auto' … owned or operated by or rented or loaned to any insured." (Doc. 24-1, at 14.) The Policy defined the term "auto" as meaning "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment," but limited that definition by clarifying that "'auto' does not include 'mobile equipment'." (*Id.* at 22.) The term "mobile equipment" is also defined in the Policy, with that definition in pertinent part reading as follows: "Vehicles … maintained primarily for purposes other than the transportation of persons or cargo." (*Id.* at 23.)

Third, although "mobile equipment" is outside the ambit of the Auto Exclusion, the Policy had a separate exclusion (the "Mobile Equipment Exclusion") excluding from coverage bodily injury arising out of "[t]he transportation of 'mobile equipment' by an 'auto' owned or operated by or rented or loaned to any insured." (*Id.* at 14.)

On summary judgment, Nautilus invokes all three of these exclusions and maintains that they unambiguously negate coverage for Tyer's injury. MAMGA and Tyer have submitted memoranda opposing enforcement of the exclusions in this manner.

-3-

## II.  Summary Judgment Standard.

Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III.  Analysis.

### A.  *Relevant Legal Principles Governing Insurance Policies.*

The parties' briefs reflect agreement that the Policy is governed by Alabama law. The Alabama Supreme Court has made clear that "[g]eneral rules of contract law govern an insurance contract" and that "[t]he court must enforce the insurance policy as written if the terms are unambiguous." *Lambert v. Coregis Ins. Co.*, 950 So.2d 1156, 1161 (Ala. 2006) (citations omitted).[5] Alabama law provides that "[a] court must not rewrite a policy so as to include or

---

[5]  *See also Progressive Specialty Ins. Co. v. Naramore*, 950 So.2d 1138, 1141 (Ala. 2006) ("Insurance contracts are to be enforced as they are written, as long as there is no ambiguity in the provisions involved.") (citations omitted); *Shrader v. Employers Mut. Cas. Co.*, 907 So.2d 1026, 1034 (Ala. 2005) ("If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy ... by making a new contract for the parties.") (citation omitted).

exclude coverage that was not intended." *State Farm Mut. Auto. Ins. Co. v. Brown*, 26 So.3d 1167, 1169 (Ala. 2009) (citations omitted).

Under Alabama law, "[t]he issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide. ... If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court." *Nationwide Ins. Co. v. Rhodes*, 870 So.2d 695, 696-97 (Ala. 2003) (citation omitted); *see also B.D.B. v. State Farm Mut. Auto. Ins. Co.*, 814 So.2d 877, 879 (Ala.Civ.App. 2001) ("The interpretation of an insurance contract presents a question of law."). An insurance provision is ambiguous "when it may be understood in more than one way or when it refers to two or more things at the same time." *Shrader v. Employers Mut. Cas. Co.*, 907 So.2d 1026, 1033 (Ala. 2005) (citations omitted); *see also Lambert*, 950 So.2d at 1162 ("A term in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence."). "In determining whether the language of a contract is ambiguous, courts construe the words according to the interpretation ordinary men would place on the language used therein. ... The words are given the meaning that persons with a usual and ordinary understanding would place on the words." *Progressive Specialty Ins. Co. v. Naramore*, 950 So.2d 1138, 1141 (Ala. 2006) (citations and internal quotations omitted).

The determination of whether policy language is ambiguous or unambiguous is critical for several reasons. First, as already mentioned, if the policy language is unambiguous, then its construction and legal effect are questions of law for the court. Second, as a general proposition, "[t]o the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Safeway Ins. Co. of Alabama, Inc. v. Herrera*, 912 So.2d 1140, 1143 (Ala. 2005); *see also HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309, 1315 (11th Cir. 2008) ("when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured"). Third, "when ambiguity exists in the language of an exclusion, the exclusion will be construed so as to limit the exclusion to the narrowest application reasonable under the wording." *Porterfield v. Audobon Indem. Co.*, 856 So.2d 789, 806 (Ala. 2002) (citation omitted); *see also Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Roberts Bros., Inc.*, 550 F. Supp.2d 1295, 1304 (S.D. Ala. 2008) (similar).

Under Alabama law, the burden of proving applicability of a policy exclusion rests with the insurer. *See, e.g., Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 697 (Ala. 2001) ("Twin City has the burden of proof in asserting that a claim is excluded under its policy of insurance."); *Acceptance Ins. Co. v. Brown*, 832 So.2d 1, 12 (Ala. 2001) ("In general, the insurer bears the burden of proving the applicability of any policy exclusion.").

### B. *Tyer's Accident is Excluded by Unambiguous Policy Language.*

Nautilus's arguments that the terms of the Policy expressly, unambiguously exclude coverage for Tyer's injuries at the MAMGA parade are both compelling and largely uncontested.

Looking first at the Events Exclusion, that provision specifically excludes coverage for bodily injury (a) to "any person while … participating in, any … demonstration, event, exhibition, … [or] show" or (b) to "any person … while in the activity area such as … the pit, track, chute, corral or arena." (Doc. 24-1, at 45.) The ordinary meaning of the term "event" would surely encompass the MAMGA parade. And the term "any person" is defined as including "participants" in the event. (*Id.*) It cannot reasonably be debated that Tyer, as a participant and rider on the float during the parade, falls squarely within the meaning of "any person" for purposes of the Events Exclusion. Moreover, given that he was injured at the conclusion of the parade while helping another rider dismount from the parade float, Tyer unquestionably sustained his injuries while "participating" in an "event" and while "in the activity area." Thus, the uncontroverted facts and circumstances surrounding Tyer's injuries reflect that the Policy excludes coverage under the clear, unambiguous language of the Events Exclusion.

Similarly, it appears that Tyer's claim is excluded by one or the other of the Policy's Auto or Mobile Equipment Exclusions. The only uncertainty here is whether the allegedly defective and unreasonably dangerous parade float that injured Tyer is construed as an "auto" or as "mobile equipment" under the Policy.[6] Either way, however, the result for coverage purposes

---

[6] Recall that the Policy definition of "auto" includes "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment," but does not include "mobile equipment." (Doc. 24-1, at 22.) So the parade float in question cannot constitute both an "auto" and "mobile equipment" under the Policy, because the two categories are mutually exclusive. "Mobile equipment" is defined in the Policy as including "[v]ehicles … maintained primarily for purposes other than the transportation of persons or cargo." (*Id.* at 23.) The record is silent as to the purpose for which the float in question was
(Continued)

-6-

is the same. If the parade float is an "auto," then the Auto Exclusion would reach Tyer's loss because that exclusion excludes coverage for bodily injury "arising out of the ... use or entrustment to others of any ... 'auto' ... rented or loaned to any insured." (Doc. 24-1, at 14.) It is undisputed that MAMGA (*i.e.*, the insured) had rented the float (*i.e.*, the auto) from a third party, and that Tyler's injuries arose out of the "use or entrustment to others" (*i.e.*, Dariese Hair Salon, which was using that float during the parade) of that float. Thus, if the parade float is an "auto," then coverage is excluded. By the same token, if the parade float is "mobile equipment," then the Mobile Equipment Exclusion would apply to the loss because that exclusion excludes coverage for bodily injury arising out "[t]he transportation of 'mobile equipment' by an 'auto' owned or operated by or rented or loaned to any insured." (*Id.*) Defendants have not challenged that the float (*i.e.*, the mobile equipment) was transported by an auto (*i.e.*, the truck or other vehicle towing the float) owned, operated, rented or loaned to MAMGA (the insured), or that Tyer's injuries arose from such transportation.[7] Thus, regardless of whether the float is properly

---

maintained by its owners, and no party has advanced any argument as to whether the float is properly classified as an "auto" or as "mobile equipment." However, everyone seems to agree that the float is either an "auto" or "mobile equipment"; certainly, defendants have not argued otherwise. It appears likely that the float is properly classified as "mobile equipment," given that it is a vehicle (*i.e.*, a wheeled conveyance) whose primary purpose is not to transport persons or cargo, but is instead to serve as public entertainment during Mardi Gras parades. *See generally Western Nat'l Ins. Group v. City of Effie*, 1995 WL 34813, *3 (Minn. App. Jan. 31, 1995) (holding that parade vehicle was mobile equipment where "it is clear that the Shriners maintained the vehicle not to *transport* persons or things from one place to another, but to provide entertainment in a particular locale"). Nonetheless, because it is unnecessary to answer this question definitively to resolve the pending Rule 56 motion, and because the non-movants have failed to address the auto/mobile equipment distinction in their briefs, the Court declines to do so here. What is important is that the parties identify no scenario, and the Court discerns none, in which the parade float would qualify as <u>neither</u> an "auto" nor "mobile equipment" under the subject Policy.

[7] In a footnote, Nautilus indicates that MAMGA possesses knowledge of whether the vehicle towing the float during the parade was owned by, operated by, rented to, or loaned to MAMGA. (Doc. 24, at 16 n.1.) Yet MAMGA is silent as to the status of the towing vehicle, notwithstanding Nautilus's invitation to protest if the towing vehicle was not in fact owned or operated by, or rented or loaned to, MAMGA. Furthermore, it is undisputed that the event where the accident occurred was the MAMGA parade. Logic and common sense suggest that trucks pulling the floats during the parade would themselves be owned by, operated by, rented to, or loaned to MAMGA. After all, it was MAMGA's parade. In any event, defendants have failed to (Continued)

classified as an auto or as mobile equipment, coverage for Tyer's accident would be excluded under the plain terms of the Policy.

Neither Tyer nor MAMGA articulates any dissent to any of the foregoing analysis. Non-movants do not suggest, much less expressly argue, that Tyer's injuries fall outside the clear terms of these exclusions. To the contrary, MAMGA "concedes that the various exclusions of coverage for bodily injuries arising out of the use of 'autos', 'mobile equipment' and for 'events' appear to preclude insurance coverage for the loss that serves as the basis of this action." (Doc. 26, at 3.) Accordingly, and based on the foregoing analysis, the Court concludes that the Policy unambiguously excludes coverage for Tyer's injuries pursuant to the plain language of one or more of the Event, Auto, or Mobile Equipment Exclusions.

### C. The "Reasonable Expectations" Argument.

Rather than arguing that the loss in question falls outside the clear terms of the Policy's exclusions, MAMGA's and Tyer's sole basis for opposing Nautilus's Motion for Summary Judgment is to invoke the doctrine of reasonable expectations. The gist of their argument is that MAMGA is a Mardi Gras organization that purchased commercial liability insurance from Nautilus for its Mardi Gras activities, including a parade. By inserting exclusions in the Policy to block coverage for a substantial portion of the Mardi Gras parade activities for which MAMGA purchased the Policy in the first place, defendants argue, Nautilus frustrated MAMGA's reasonable expectations.[8] On that basis, defendants assert that ambiguity should be imputed into the Policy and that these exclusions should be construed against Nautilus to conform the Policy to the insured's reasonable expectations.

---

proffer any evidence or argument to the contrary, and this Court will not formulate their arguments for them.

[8] As MAMGA frames the issue, "the far reaching exclusions in the Nautilus Insurance policy substantially erode the very protection that MAMGA believed that it was purchasing," such that "it violates the doctrine of reasonable expectations." (Doc. 26, at 3.) Tyer likewise insists that "[t]o construe an 'Events Exclusion' to exclude a parade in an insurance policy issued to a mardi gras association for a parade is not reasonable. To construe an 'Automobile Exclusion' or a 'Mobile Equipment [Exclusion]' to exclude floats in an insurance policy issued to a mardi gras association for a parade is not reasonable." (Doc. 27, at 6.)

Defendants' argument stretches the doctrine of reasonable expectations well past its defined boundaries. Contrary to defendants' position, Alabama law does not allow an insured's coverage expectations to trump unambiguous policy language and Alabama courts do not rewrite clear contracts simply because one party expected something different than the contract provided. Indeed, Alabama courts have consistently expressed profound reluctance to tinker with clear policy language by substituting their own subjective sense of what is fair for the terms of the parties' actual bargain. To embark on such a slippery slope would be to risk wholesale invalidation of bargained-for, agreed-upon policy exclusions in the name of a judge's *post hoc* perceptions of equity. Alabama law does not allow such an activist approach. Indeed, as the Alabama Supreme Court explained, "[o]ther courts have limited the use of the doctrine of reasonable expectations to situations in which an insurance policy is ambiguous. … Such a limit on the doctrine of reasonable expectations is necessary. Otherwise, this Court would be faced with the strong temptation to substitute its notion of equity for the unambiguous terms of a contract and the doctrine could be used to invalidate every policy exclusion." *Federated Mut. Ins. Co. v. Abston Petroleum, Inc.*, 967 So.2d 705, 714 (Ala. 2007) (citations omitted); *see also American Resources Ins. Co. v. H & H Stephens Const., Inc.*, 939 So.2d 868, 880 (Ala. 2006) ("the doctrine of reasonable expectations is not so expansive that any ambiguity in a policy will automatically justify disregarding an unambiguous exclusion in the policy"); *Herrera*, 912 So.2d at 1145 ("this Court limited the doctrine of 'reasonable expectation' to ambiguous provisions of an insurance policy"). Stated differently, an insured's expectations are necessarily "limited by the unambiguous terms of" an exclusion, such that expectations of coverage running counter to an unambiguous exclusion "could not be objectively reasonable," as a matter of law. *Abston Petroleum*, 967 So.2d at 715.[9]

It is the general rule in Alabama that a sophisticated insured like MAMGA has a duty to read its insurance policies and is charged with knowledge of same. *See AmerUS Life Ins. Co. v. Smith*, 5 So.3d 1200, 1208 (Ala. 2008) (recognizing a plaintiff's "general duty … to read the

---

[9] One commentator explained the rule in these terms: "An insured is obligated to read his or her policy. Moreover, an insurer is not obligated to explain unambiguous provisions to the insured …. As a result, unless a policy exclusion can be rendered unenforceable, the insured's reasonable expectations can be only what is unambiguously reflected in the insurance policy." 2 Allan D. Windt, *Insurance Claims & Disputes* § 6.3 (5th ed.) (footnotes omitted).

documents received in connection with a particular transaction") (citation omitted); *Kanellis v. Pacific Indem. Co.*, 917 So.2d 149, 154 (Ala.Civ.App. 2005) ("An insured who is competent in intelligence and background to understand insurance policy language is charged with knowledge of language in a policy received by that insured.") (citation omitted). Review of the unambiguous language of the Policy, and in particular the aforementioned exclusions, would have negated any expectation by MAMGA that the Policy "would cover operation of floats and … participation in a Mardi Gras parade." (Doc. 26, at 4.) To the extent that MAMGA actually harbored such expectations (which cannot be discerned from this record, in any event),[10] they were unreasonable because they proceeded in derogation of clear exclusions to the Policy. Insurance policy exclusions cannot and will not be invalidated under Alabama law based on an insured's <u>unreasonable</u> expectations.

Certainly, Alabama authorities such as *Abston Petroleum* and *Herrera* allow application of the doctrine of reasonable expectations where policy terms are ambiguous. Thus, for example, if the Events Exclusion were ambiguous in a material way, the doctrine of reasonable expectations would authorize this Court to resolve that ambiguity in a manner that conforms to MAMGA's reasonable expectations of coverage. But defendants have failed to identify any portion of the Policy or its exclusions that suffers from ambiguity. This is a necessary precondition to utilizing the doctrine of reasonable expectations. Without ambiguity in the Policy, MAMGA cannot invoke its reasonable expectations as a means of securing a favorable construction of a Policy provision. Defendants misapply these principles by suggesting that an insured's "reasonable expectations" of coverage can manufacture an ambiguity in an otherwise unambiguous insurance policy. This is simply incorrect. *See Abston Petroleum*, 967 So.2d at 714 (emphasizing "requirement that, for the rule of reasonable expectations to apply, there be, as

---

[10] In this regard, it bears noting that the summary judgment record is devoid of evidence as to MAMGA's coverage expectations; rather, defendants rely on mere conclusory statements from counsel as to what MAMGA expected when it purchased insurance from Nautilus. Of course, counsel's representations in a memorandum of law are not evidence that may be properly considered on summary judgment. *See, e.g., Taylor v. Holiday Isle, LLC*, 561 F. Supp.2d 1269, 1275 n.11 (S.D. Ala. 2008) ("Unadorned representations of counsel in a summary judgment brief are not a substitute for appropriate record evidence."); *Nieves v. University of Puerto Rico*, 7 F.3d 270, 276 (1st Cir. 1993) ("Factual assertions by counsel in motion papers, memoranda, briefs, or other such self-serving documents, are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment.").

a predicate, doubts as to the real intent of the policy") (citation omitted); *Herrera*, 912 So.2d at 1145 (determining that, where exclusion to coverage is not ambiguous, "the doctrine of 'reasonable expectation' is unavailable" to the insured).[11]

Tyer contends that use of reasonable expectations is bolstered here by *West American Ins. Co. v. Biggs*, 348 So.2d 258 (Ala.Civ.App. 1977), and by *Townsend Ford, Inc. v. Auto-Owners Ins. Co.*, 656 So.2d 360 (Ala. 1995). Neither decision is on point. In *Biggs*, there was an actual conflict in the terms of the insurance policy, inasmuch as "the automatic removal position would give coverage and the theft exclusion would take it away" by effectively "constru[ing] out of existence an entire section of the policy." 348 So.2d at 261. But Tyer does not (and cannot reasonably) allege that the exclusion at issue here would "construe out of existence an entire section of the policy," so as to create an ambiguity. Instead, the Policy here extends coverage, which is then narrowed (but not eradicated) by certain exclusions. There is no tension or ambiguity in such an arrangement, so the extreme situation in *Biggs* has no application here. Simply put, "we are not here presented with separate provisions of an insurance policy each of which is unambiguous when read without reference to the other but, when read together, create a conflict giving rise to an ambiguity." *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 312 (Ala. 1999).

As for *Townsend*, the insured was an automobile dealer sued by customers alleging fraud and breach of warranty in connection with the sale of used motor vehicles. The insurer argued that insurance coverage did not apply because of an automobile exclusion for loss "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft

---

[11] In arguing otherwise, both MAMGA and Tyer rely heavily on language in a 1976 Alabama Supreme Court opinion that "where an expectation … is in conflict with the limiting clause in the policy, the resulting ambiguity must be resolved in favor of the insured due to the nature of insurance contracts." *Lambert v. Liberty Mutual Ins. Co.*, 331 So.2d 260, 263 (Ala. 1976). But they ignore subsequent decisions recognizing that this passage of *Lambert* is incompatible with prior precedent, and casting it aside as mere *dicta*. *See Abston Petroleum*, 967 So.2d at 714 (citing this passage from *Lambert* as well as prior contrary authority, and opining that "to the extent *Lambert* is inconsistent with *Chapman*'s requirement that, for the rule of reasonable expectations to apply, there be, as a predicate, doubts as to the real intent of the policy, the statements in *Lambert* are *dicta*") (citation omitted). Thus, the Alabama Supreme Court has expressly discredited, distanced itself from, and relegated to *dicta* status the key language of *Lambert* on which defendants' reasonable expectations argument rests.

owned or operated by … any insured." 656 So.2d at 365. The exclusion was ambiguous as to whether it covered losses arising from the sale of inventory. The Alabama Supreme Court resolved the ambiguity by explaining that, because the insured "was in the business of selling automobiles," to apply the automobile exclusion to the sale of automobiles "would be to exclude coverage of almost everything." *Id.* On this basis, the *Townsend* Court deemed the automobile exclusion inapplicable and found that the claims at issue were beyond the scope of the exclusion.[12] *Townsend* is distinguishable for at least two reasons. First, while the auto exclusion in *Townsend* was ambiguous as to whether the sale of inventory was within its scope, the exclusions here are not ambiguous as to whether the underlying loss falls within their ambit. There is no ambiguity to resolve as to the exclusions here, and hence no reason to apply rules of construction to the Policy language or to go beyond its plain terms in construing its meaning. Second, unlike the devastating effect of the automobile exclusion in *Townsend* "to exclude coverage of almost everything," the exclusions at issue here are not nearly so draconian, but would preserve substantial coverage for MAMGA for various losses in connection with its Mardi Gras activities, albeit not <u>this</u> loss.[13] *Townsend* does not aid the efforts of MAMGA and Tyer to evade the unambiguous terms of the Policy exclusions.

---

[12] As another court construing *Townsend* explained, "*Townsend* held that an automobile dealership's misrepresentations did not fall within the scope of the automobile exclusion." *Capital Alliance Ins. Co. v. Cartwright*, 512 S.E.2d 666, 669 (Ga. App. 1999).

[13] Tyer suggests that the exclusions in this case are comparable in breadth to those in *Townsend*. Without elaboration or explanation, Tyer characterizes Nautilus's argument as construing the Events Exclusion "to exclude a parade in an insurance policy issued to a mardi gras association for a parade." (Doc. 27, at 6.) But the exclusions in question do not "exclude a parade"; rather, they simply narrow the coverage provided for MAMGA's parade. For example, the Events Exclusion eliminates coverage for participants in the parade, but on its face would not affect coverage for bodily injury or property damage to bystanders or non-participants. Defendants have made no showing otherwise, beyond Tyer's conclusory general statement that the Events Exclusion "exclude[s] a parade." This is simply not an extreme case where the exclusions in question effectively wipe out all coverage provided, so as to create a contradiction, as in *Biggs*. Nor is it a case of ambiguity where the insurer seeks to apply the exclusions to conduct that may or may not be within the scope of those exclusions, as in *Townsend*. Here, defendants have identified no conflict between separate provisions of the Policy, and it is undisputed that the loss in question falls squarely within the unambiguous terms of Policy exclusions.

Finally, to the extent that defendants are or may be contending that the Policy's coverage is illusory, the Court does not agree. Certainly it is true that Alabama courts do not allow insurers to extend coverage with one hand, then eradicate it with the other. *See, e.g., Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1263 n.7 (11th Cir. 2007) ("In Alabama, insurance contracts must be interpreted to avoid illusory coverage, which occurs when a limitation or exclusion completely contradicts a coverage provision."); *Shrader*, 907 So.2d at 1033 (explaining that if exclusions "completely contradict the insuring provisions, insurance coverage becomes illusory" and that "Alabama law does not countenance such illusory coverage") (citations and internal quotation marks omitted). But that is not what Nautilus's Policy does; rather, that Policy extends coverage with one hand, then narrows that coverage with the other. This is neither illusory coverage nor otherwise improper under Alabama law. *See generally St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Center*, 595 So.2d 1375, 1377 (Ala. 1992) ("in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage").

**IV. Conclusion.**

For all of the foregoing reasons, the Court finds that the commercial lines insurance policy issued by Nautilus Insurance Company to Mobile Area Mardi Gras Association, Inc. that was in effect on February 24, 2009 does not provide coverage for the injuries sustained by Dominic Tyer at the MAMGA event on that date. The loss in question falls squarely within the terms of one or more unambiguous policy exclusions. Accordingly, it is **ordered** as follows:

1. Plaintiff's Motion for Summary Judgment (doc. 24) is **granted**;
2. The undersigned **finds** and **declares** that the commercial lines policy issued by Nautilus to MAMGA does not provide insurance coverage to MAMGA for any claims arising from Dominic Tyer's injuries of February 24, 2009;
3. Because this ruling resolves all claims and defenses joined in this action, the Clerk of Court is **directed** to terminate this case for administrative and statistical purposes; and
4. A separate judgment will enter.

DONE and ORDERED this 27th day of October, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE